UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                          Bankruptcy No. 05-30389
                                                                                                Chapter 7
Anthony W. Tyrrell
and Elizabeth M. Tyrrell,

               Debtors.
_____/

Area Community Credit Union,

               Plaintiff,

         vs.                                                                          Adversary No. 05-7030

Anthony W. Tyrrell
and Elizabeth M. Tyrrell,

               Defendants.
_____/

**MEMORANDUM AND ORDER**

By Complaint filed June 28, 2005, Plaintiff Area Community Credit Union ("the credit union") initiated this adversary proceeding seeking determinations that Debtor/Defendants Anthony W. Tyrrell and Elizabeth M. Tyrrell are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and that an outstanding debt owed by Debtor Anthony Tyrrell to the credit union on four loans in the total amount of $91,624.60 plus interest is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (6).[1] The Debtors filed an Answer and Counterclaim on August 1, 2005, denying

---

[1] The Complaint initially states that the action is brought pursuant to sections 523(a)(2), (4) and (6), but later individually addresses the causes of action under sections 523(a)(2) and (6) and section 727(a)(4). The credit union's pretrial statement likewise references sections 523(a)(2) and (6) and section 727(a)(4)(A), but not section 523(a)(4). The credit union did not reference section 523(a)(4) at the trial. Based on the foregoing, and the fact that the credit union never alleged fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny

the allegations and seeking a monetary judgment of at least $15,000.00 against the credit union. The credit union filed an Answer to the counterclaim on August 26, 2005, denying the Debtors' allegations. The matter was tried on November 3, 2005. The following constitutes the Court's findings of facts and conclusions of law.

The credit union's manager, Mary Larson, dealt with Anthony Tyrrell and approved each of the four loans at issue in this case. First, on March 22, 2004, the credit union loaned Anthony Tyrrell $5,000.00 for boat accessories to be rolled over into a future boat loan. Mary Larson testified that she considered Anthony Tyrrell's income from his employment with the military in approving the loan.

On April 5, 2004, Anthony Tyrrell asked Mary Larson that the loan not be rolled into the future boat loan because he and his wife would be getting a $25,000.00 inheritance within six months. He wanted to pay only the interest on the loan until the inheritance came, at which time he would pay off the loan in full. Mary Larson agreed with the proposed modification of the terms of the loan. She testified that she believed the Debtors would be receiving the inheritance because Anthony Tyrrell was employed by the military, and she knows that lying is considered a dereliction of duty by the military.

Also on April 5, 2004, the credit union made the second loan at issue, providing Anthony Tyrrell $38,511.00 to purchase a boat. In approving this loan, Mary Larson considered the fact that the $5,000.00 loan initiated on March 22, 2005, would be paid in full by the anticipated inheritance.

---

as a basis for nondischargeability under section 523(a)(4), the Court deems the initial reference in the Complaint to section 523(a)(4) to be a typographical error. If the reference was intended, the Court deems the claim abandoned, unproven by the facts of the case, and dismissed.

2

She testified that she would not have approved the boat loan but for the assurance of the inheritance because Anthony Tyrrell would have had too much unsecured debt.

Anthony Tyrrell conceded at trial that he and Mary Larson discussed the possibility of an inheritance. Elizabeth Tyrrell's grandmother had told them that when she died each grandchild would receive an inheritance. She had between $400,000.00 and $500,000.00 in assets, and the Debtors estimated they would be receiving approximately $25,000.00 based on the number of her children and grandchildren. Anthony Tyrrell testified he was telling the truth when he told Mary Larson he thought they would be receiving an inheritance.

On June 23, 2004, the credit union loaned Anthony Tyrrell $6,700.00 to cover the Debtors' summer expenses because Elizabeth Tyrrell had a job fall through, and the Debtors needed money for their children's activities. Mary Larson testified that this loan was also given based on the representation by Anthony Tyrrell that the Debtors would be receiving a $25,000.00 inheritance within six months, and she approved the loan as a single-payment note. Again, she testified that she would not have approved this loan without the assurance of the inheritance.

Anthony Tyrrell testified he and Mary Larson discussed the possibility of the inheritance not panning out because she had seen many cases where it did not. The plan was to pay off the two smaller loans in full if the inheritance came, but to make monthly payments on them if it did not.

The fourth loan at issue was approved on August 2, 2004. The credit union loaned Anthony Tyrrell $35,000.00 to purchase a 2001 Toyota Land Cruiser. Mary Larson testified she approved this loan because the two smaller loans of $5,000.00 and $6,700.00 would be paid off with the inheritance in October 2004. She did not include Elizabeth Tyrrell's income in the determination

3

of whether to make the loan. She testified again that she would not have approved the loan without the assurance of the inheritance.

Anthony Tyrrell purchased the Land Cruiser from a dealership in Minneapolis. The dealership required taxes, registration and title fees to be paid at the time of purchase, and it then returned that money in the form of a check payable to Anthony Tyrrell and the DMV (Department of Motor Vehicles) so that the vehicle could be registered in North Dakota. Anthony Tyrrell testified that he took the DMV off the check and cashed it to make loan payments to the credit union and to cover other expenses. He was overextended financially, and was trying to keep his "head above water." He said he intended to register the vehicle after his wife returned to work as a teacher. The credit union repossessed the Land Cruiser in January 2005.

## I. Dischargeability of Debt

The statutory exceptions to discharge in bankruptcy are narrowly construed to effectuate the fresh start policy of the Bankruptcy Code. Owens v. Miller (In re Miller), 276 F.3d 424 (8th Cir. 2002). Accordingly, a creditor opposing discharge of a debt must prove the debt falls within an exception to discharge. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993). The standard of proof for exceptions to discharge under 11 U.S.C. § 523(a) is the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991).

A.   Section 523(a)(2): False Pretenses, False Representation or Actual Fraud

Section 523(a)(2) of the Bankruptcy Code provides that a discharge does not discharge an individual debtor from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—
>    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

4

>   (B) use of a statement in writing—
>       (I) that is materially false;
>       (ii) respecting the debtor's or an insider's financial condition;
>       (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>       (iv) That the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2). The credit union did not specify, either in its pleadings or at trial, whether it was seeking nondischargeability of the debts at issue under subsection (A) or (B). Because subsection (B) covers only statements "respecting a debtor's . . . financial condition" and subsection (A) excludes such statements, the subdivisions are expressly mutually exclusive. See Land Investment Club, Inc. (In re Lauer), 371 F.3d 406, 413 (8th Cir. 2004). The credit union's allegation in this case is that Anthony Tyrrell made a misrepresentation with respect to his financial condition — specifically that he and his wife would be receiving an inheritance — and subsection (A) is therefore inapplicable.

To prevail under section 523(a)(2)(B), the credit union must establish by a preponderance of the evidence that the Debtors obtained money from it 1) by the use of a statement in writing that was materially false; 2) that pertained to his financial condition; 3) on which the credit union reasonably relied; and 4) that the Debtors made the statement with the intent to deceive the credit union. See 11 U.S.C. § 523(a)(2)(B); Jacobus v. Binns (In re Binns), 328 B.R. 126, 130 (B.A.P. 8th Cir. 2005).

As mentioned above, the statement in this case is Anthony Tyrrell's representation to Mary Larson that he and his wife would be receiving an inheritance. This statement pertained to his financial condition and satisfies the second element of section 523(a)(2)(B). The remaining issues are whether the written statement was materially false, whether the credit union reasonably relied

5

on that statement in granting the loans to Anthony Tyrrell, and whether Anthony Tyrrell made the statement with intent to deceive the credit union.

     1.     Material falsity

The first element requires that the statement be written and materially false. The first loan, dated March 22, 2004, did not include any reference to an inheritance until subsequent action was taken on April 5, 2004, to make the loan payments interest only. This loan therefore falls outside the purview of section 523(a)(2)(B) because it was not obtained by use of a written statement regarding the inheritance until after the loan had been given.

The loan applications for the other three loans at issue do reference the anticipated inheritance in notes handwritten by Mary Larson. Although Anthony Tyrrell did not write the notes, he signed the loan applications, and written statements need not be physically prepared by a debtor to satisfy the writing requirement of section 523(a)(2)(B). See Fairfax State Sav. Bank v. McCleary (In re McCleary), 284 B.R. 876, 885 (Bankr. N.D. Iowa 2002). The writing requirement is satisfied if the written statement was signed, adopted and used, or caused to be prepared by, the debtor. Id.; Voyatzoglou v. Hambley (In re Hambley), 329 B.R. 382, 399 (Bankr. E.D.N.Y. 2005). The question, therefore, is whether the statements regarding the anticipated inheritance were materially false.

The concept of "materiality" within the context of section 523(a)(2)(B) includes objective and subjective components. Ramsey Nat'l Bank & Trust Co. v. Dammen (In re Dammen), 167 B.R. 545, 550-51 (Bankr. D.N.D. 1994). Objectively, a statement is materially false if it paints a substantially untruthful picture of a debtor's financial condition by misrepresenting information of the type that would normally affect the decision to grant credit. Wallander v. Wallander (In re

6

Wallander), 324 B.R. 746, 752 (Bankr. N.D. Iowa 2005). The relevant subjective inquiry, although not dispositive, is whether the complaining creditor would have extended credit had it been apprised of the debtor's true situation. In re Dammen, 167 B.R. at 51.

      Mary Larson testified that the credit union would not have made the loans without the anticipated inheritance. The Court finds her testimony credible and infers that the statement therefore affected her decision making process and was subjectively material. The Court is not convinced, however, that the credit union proved his statement was a misrepresentation that painted a substantially untruthful picture. Anthony Tyrrell was also credible to the Court, and he sincerely testified he believed he and his wife would be receiving approximately $25,000.00 in inheritance from his wife's grandmother when he was applying for the loans. He did not tell the credit union he had already received the inheritance, but rather said he would be receiving it. Significantly, there is no evidence that the supposedly devising grandmother was deceased at the time the loans were made, or, for that matter, that she is presently deceased. Indeed, the dearth of evidence elicited at trial precludes a finding that Anthony Tyrrell's statement was false at the time because it has not been proven to be false presently. In other words, he and his wife might still realize an inheritance from Elizabeth Tyrrell's grandmother if she is still alive or if she is deceased but her estate has not yet been administered. Anthony Tyrrell's statements that he would be receiving an inheritance may have painted an overly-optimistic picture of his future financial condition, but they did not paint a substantially untruthful picture of his financial condition at the time the loans were made. The credit union failed to prove that the statements that Anthony Tyrrell would – or yet will – receive an inheritance were false, and the statements therefore cannot be held to be materially false.

2.       Reasonable Reliance

The next issue is whether the credit union reasonably relied on Anthony Tyrrell's statements that he would be receiving an inheritance. To establish reasonable reliance, a creditor must prove that reliance was objectively reasonable and that there was actual reliance. In re Bowden, 326 B.R. 62 (Bankr. E.D. Va. 2005). Reasonable reliance is determined considering the totality of the circumstances. First Nat'l Bank of Olathe v. Pontow, 111 F.3d 604, 610 (8th Cir. 1997); Guess v. Keim (In re Keim), 236 B.R. 400, 402 (B.A.P. 8th Cir. 1999).

Mary Larson testified that she did indeed rely on Anthony Tyrrell's statement that he would receive an inheritance, and that she would not have approved the loans without the anticipated inheritance. Whether the reliance was objectively reasonable is the issue. The Court does not sit as an after-the-fact loan committee that second guesses lending decisions, but the standard of reasonableness places a measure of responsibility on a creditor to ensure that there exists some basis for relying on a debtor's representations. Among other things, a court may consider whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate, and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations. Pontow, 111 F.3d at 610. The issue of reasonableness presented under section 523(a)(2)(B) is not whether it was reasonable for the credit union to have loaned Anthony Tyrrell the money, but whether it was reasonable for the credit union to have relied upon his statement that he would be receiving an inheritance in making those loans.

Mary Larson testified that she believed Anthony Tyrrell would be receiving an inheritance because he was employed by the military and lying is considered a dereliction of duty. Using her

8

logic, she would have believed any statement – regardless how unreliable – that Anthony Tyrrell made about his financial condition because he was employed by the military. Mary Larson's lack of critical curiosity about the anticipated inheritance strains the credulity of a reasonable person. The credit union should have recognized that any inheritance was speculative and should have investigated the situation before extending credit. At a minimum, the credit union should have required some type of proof that the supposed deviser was deceased and that Anthony Tyrrell would be receiving an inheritance. The speculative nature of the inheritance was a red flag that would have alerted an ordinarily prudent lender to conduct at least a minimal investigation into the veracity of the assertion. Instead, the credit union conducted no investigation at all as to the accuracy of the assertion made by Anthony Tyrrell simply because he was in the military. Applying the totality of the circumstances test, the court finds that the credit union's blind reliance on Anthony Tyrrell's assertion that he would be receiving an inheritance was not reasonable.

3. Intent to Deceive

For discharge to be barred, the debtor must have acted with intent to deceive. A creditor may establish such intent by proving reckless indifference to or reckless disregard of the accuracy of the information in a debtor's financial statement. NAFCO Fed. Credit Union v. Lawson (In re Lawson), 308 B.R. 417, 423 (Bankr. D. Neb. 2004).

The record in this case does not support a finding of recklessness or actual intent to deceive. Anthony Tyrrell believed he would be receiving an inheritance, and the credit union did not discredit his testimony. See First State Bank v. Caruth (In re Caruth), 2002 WL 1770523 (Bankr. N.D. Iowa 2002) (debtor who listed equipment he did not own on his financial statements did not have intent to deceive where debtor believed he had an interest in the equipment because he had use of it and

9

expected to inherit it eventually); Sears, Roebuck and Co. v. Taylor (In re Taylor), 11 B.R. 1006 (Bankr. M.D. Fla. 1997) (debtor did not intend to deceive because she believed at the time she made credit card charges that she could pay them from an expected inheritance).  Although Anthony Tyrrell did not provide any substantiation for his claim of an inheritance, the credit union did not request any.  The credit union was content with the limited information it received about Anthony Tyrrell's financial picture, and his failure to provide more relevant and accurate information cannot be interpreted as an intent to deceive in these circumstances.  See In re McCleary, 284 B.R. at 888 (bankruptcy court found no intent to deceive because the bank was so lax in obtaining full disclosure of the debtor's financial situation).  The Court concludes the credit union failed to prove Anthony Tyrrell had the requisite intent to deceive under section 523(a)(2)(B).

B.    Section 523(a)(6): Willful and Malicious Injury

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The terms "willful" and "malicious" are two distinct elements, and each must be shown to establish an exception to discharge.  Osborne v. Stage (In re Stage), 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005).

The term willful means deliberate or intentional.  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999). The injury, and not merely the act leading to the injury, must be deliberate or intentional.  Geiger, 523 U.S. at 61- 62.  Malice requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial injury.  Madsen, 195 F.3d at 989. Malice requires conduct more culpable than that which is in reckless disregard of the creditor's

10

economic interests and expectancies. Ehrman v. Feist (In re Feist), 225 B.R. 450, 454 (Bankr. N.D. 1998). A debtor acts with malice by intending or fully expecting to harm the economic interests of the creditor. Id. The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent additional aggravating circumstances. Johnson v. Logue (In re Logue), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003). It is the intent to cause harm to the creditor which must exist for an injury to be malicious. Stage, 321 B.R. at 493.

The credit union failed to prove Anthony Tyrrell willfully or maliciously injured it. Anthony Tyrrell intended to use the anticipated inheritance to repay the loans and did not intend to injure the credit union. With regard to the failure to register the Land Cruiser, Anthony Tyrrell explained that he used the money to pay the credit union and other expenses and to keep his "head above water." While the Court does not condone his conduct, it finds his explanation refutes any alleged willful and malicious injury. The credit union's claim under section 523(a)(6) fails.

## II. Denial of Discharge

The credit union seeks to have the Debtors denied a discharge under 11 U.S.C. § 727(a)(4)(A). Denying a debtor a discharge is a drastic remedy. In re McLaren, 236 B.R. 882, 893 (Bankr. D.N.D. 1999). In light of the policy implications favoring debtors under the Bankruptcy Code, section 727 must be construed liberally in favor of the debtor and strictly against the objecting party, with the burden of proof thereunder resting squarely on the latter. Id. The standard of proof is a preponderance of the evidence. Id.

A debtor may be denied a discharge under section 727(a)(4)(A) if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. Jordan v. Bren (In re Bren), 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004). To prove a false oath, the credit union must show

11

(1) Anthony Tyrrell made a statement under oath; (2) that statement was false; (3) he knew the statement was false; (4) he made the statement with fraudulent intent; and (5) the statement related materially to his bankruptcy case. See 11 U.S.C. § 727(a)(4)(A). Land O'Lakes Farmland Feed LLC v. Gehl (In re Gehl), 325 B.R. 369, 276 (Bankr. N.D. Iowa 2005).

As discussed above, the credit union failed to establish that Anthony Tyrrell's statement that he would be receiving an inheritance was false, that he knew it was false, and that he made it with fraudulent intent. Moreover, false statements made in prepetition loan applications are not made in connection with the bankruptcy case, and thus do not form a proper basis for a claim under section 727(a)(4). Northeast Alliance Fed. Credit Union v. Garcia (In re Garcia), 260 B.R. 622, 632 n.21 (Bankr. D. Conn. 2001); see also In re Hutchinson, 328 B.R. 30 (Bankr. W.D.N.Y. 2005) (the required false oath or account may be a false statement or omission in the debtor's schedules or a false statement by the debtor at an examination at a creditor's meeting). The credit union's claim under section 727(a)(4)(A) fails.

The outstanding obligation owed by Debtor Anthony S. Tyrrell to Area Community Credit Union in the amount of $91,624.60 plus interest is dischargeable. The counterclaim of Debtors Anthony S. Tyrrell and Elizabeth M. Tyrrell is without merit and is hereby DISMISSED.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this November 30, 2005.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**